UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LYNDON B. JOYNER, ) | Civil Action No.: 4:08-cv-2563-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| GE HEALTHCARE, KIRK ) | |
| SANSBURY, DARRYL DAVIDS ) | |
| and MARK RIESCH, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**I.     INTRODUCTION**

Plaintiff filed this action pro se on July 15, 2008, alleging causes of action arising out of the termination of his employment with Defendant GE Healthcare.  Liberally construed[1], Plaintiff's Complaint alleges causes of action for racial discrimination, harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq.

Defendants filed a Motion to Dismiss Individual Defendants (Document # 21) and a Motion to Dismiss or, in the alternative, Petition to Compel Arbitration (Document # 22) on October 24, 2008.  Thereafter, Plaintiff retained counsel and filed Responses to the Motions to Dismiss and a Motion to Amend the Complaint (Document # 37).

---

[1] A pro se litigant's pleadings are accorded a liberal construction.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed. 163, 101 S.Ct. 173 (1980); Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652, 97 S.Ct. 594 (1972); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because the Motions to Dismiss are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II.     STANDARD OF REVIEW

A motion to dismiss under Rule 12 tests the sufficiency of the complaint. It does not resolve conflicts of facts. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. It does not resolve conflicts of facts, the merits of the claim, or the applicability of defenses asserted. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999), Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the factual allegations in the complaint are accepted as true and the plaintiff is afforded the benefit of all reasonable inferences that can be drawn from those allegations. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130,1134 (4th Cir. 1993).

Materials outside the pleadings which relate to jurisdiction can be considered on a motion to dismiss for lack of jurisdiction. Land v. Dollar, 330 U.S. 731, 735, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947); Capitol Industries-EMI, Inc. v. Bennett, 681 F.2d 1107, 1118 n.29 (9th Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed. 2d 932 (1982). Whether the parties have agreed to arbitrate their disputes is a jurisdictional question. See Bhd of Ry. & S.S. Clerks v. Norfolk S. Ry. Co., 143 F.2d 1015, 1017 (4th Cir.1944)( "Arbitration deprives the judiciary of jurisdiction over the particular controversy and the courts have long ruled that there must be strict adherence to the essential terms of the agreement to arbitrate."). Thus, the Court may consider materials outside the pleadings to determine whether a valid arbitration agreement exists.

**III.    DISCUSSION**

Defendants have filed a Motion to Dismiss Individual Defendants, a Motion to Dismiss, or in the alternative, to Compel Arbitration and Plaintiff has filed a Motion to Amend Complaint. Because the arbitration issue is a question of jurisdiction, that motion will be addressed first.

As noted above, Plaintiff's Complaint can be read to assert claims pursuant to Title VII, the ADA, and the FMLA. Defendants assert that Plaintiffs claims are subject to binding arbitration pursuant to a valid arbitration agreement signed by Plaintiff.

Plaintiff was employed by GE Healthcare (GEHC) as a machinist from July 7, 2003, until July 31, 2007. On June 20, 2003, Plaintiff entered into an agreement with GEHC to submit certain employment disputes to binding arbitration pursuant to GHEC Procedure 2.12 (the RESOLVE program). See Exhibit A to Defendant's Motion (Document # 22). The RESOLVE program was updated on November 1, 2006, and was included in the GEHC-Florence Associate Handbook that Plaintiff acknowledged receiving on December 6, 2006. Plaintiff originally agreed on June 20, 2003, that "as a condition of my being hired, I shall use [GEHC][2] Procedure 2.12 (RESOLVE Resolution Program) as the exclusive means to resolve certain legal claims related to my employment." Exhibit A to Defendants' Motion (Document # 22). He further agreed that "[i]f I do not settle my covered claims with the Company before the arbitration level of the Dispute Resolution Program, I understand and agree that I must submit such claims to arbitration WHICH SHALL BE FINAL AND BINDING FOR BOTH THE COMPANY AND ME." Id. He acknowledged that "I will not be employed by the Company until I have signed this Agreement." Id.

---

[2]The agreement signed by Plaintiff on June 20, 2003 referenced GEMS (GE Medical Systems), which is now GEHC.

-3-

Included as covered claims are

1. Claims relating to compensation and leaves of absence;

* * *

3. Claims relating to involuntary terminations, such as layoffs and discharges (including constructive discharges), and notice of mass layoffs and/or plant closings;

4. Employment discrimination and harassment claims, based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law;

5. Retaliation claims for legally protected activity and/or for whistleblowing, including claims under Sarbanes-Oxley;

6. Claims of breach of contract or covenant (express or implied) and/or promissory estoppel.

Exhibit C to Defendants' Motion (Document # 22).

The Federal Arbitration Act (FAA), 9 U.S.C § 1, et seq. "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). While Congress considered the advantage of expeditious resolution of disputes through arbitration in enacting the FAA, its primary purpose was to enforce agreements into which parties have entered. Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 478 (1989).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26. The "liberal federal policy favoring arbitration agreements manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements; the Act simply 'creates a body of federal

substantive law establishing and regulating the duty to honor an agreement to arbitrate.'" Mitsubishi, 473 U.S. at 625 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983).  However, "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" Id. at 33 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., at al., 473 U.S. 614,627).  Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

State law contract principles govern whether a valid arbitration agreement exists.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995).  Under South Carolina law, formation of a valid contract requires an offer, the acceptance of the offer, and valid consideration.  Sauner v. Public Serv. Authority of S.C., 581 S.E.2d 161, 166 (2003).

Plaintiff argues that the arbitration agreement is not valid because it is unconscionable, is not supported by valid consideration, and does not cover the claims asserted by Plaintiff.  Plaintiff bears the burden of showing that the arbitration agreement is unenforceable.  Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000).   Under South Carolina law, unconscionability is defined as "the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them."  Carolina Care Plan, Inc. v. United Health Care Servs., Inc., 606 S.E.2d 752, 757 (S.C. 2004). Plaintiff appears to assert that the arbitration agreement is unconscionable because he was required to enter into it as a condition of employment.  It appears that Plaintiff is arguing that the arbitration agreement is an adhesion contract, which is  standard form contract

offered on a take-it-or-leave-it basis with terms that are not negotiable. Simpson, 373 S.C. at 26-27, 644 S.E.2d at 669 (citing Munoz v. Green Tree Fin. Corp., 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001)). However, adhesion contracts are not per se unconscionable. Lackey v. Green Tree Fin. Corp., 330 S.C. 388, 395, 498 S.E.2d 898, 902 (Ct.App.1998). As the South Carolina Supreme Court has noted, the standardization of contracts is "'a rational and economically efficient response to the rapidity of market transactions and the high costs of negotiations.'" Id. (quoting Goodwin v. Ford Motor Credit Co., 970 F.Supp. 1007, 1015 (M.D.Ala.1997)). Plaintiff makes no argument as to how the arbitration agreement is unconscionable other than to say it was offered on a "take-it-or-leave-it" basis, and fails to present any evidence to support such an argument. Thus, this claim is without merit.

Plaintiff also argues that the arbitration agreement lacks consideration. An arbitration agreement is supported by adequate consideration when the parties mutually agree to be bound by the arbitration process and the agreement does not permit the employer to ignore the results of arbitration. See e.g., Adkins v. Labor Ready, Inc., 303 F.3d. 496, 501 (4th Cir. 2002) (finding that the agreement to be bound by arbitration is adequate consideration); Johnson v. Circuit City Stores, 148 F.3d 373 (4th Cir. 1998) (finding arbitration agreement where employee and employer are bound gives adequate consideration). Plaintiff argues that, because GEHC reserves the right to, within its sole discretion, alter, amend, modify or revoke the program at any time, its promise to arbitrate is merely illusory and GEHC is not really promising anything. However, GEHC's ability to modify or revoke the RESOLVE program in not without limitations. The agreement requires GEHC to provide 30 days notice before modifying or discontinuing the program. Exhibit C, § E, to Defendants' Motion to Dismiss (Document # 22). Furthermore, the agreement provides,

> An employee shall complete the processing of any concern/claim pending in RESOLVE prior to the effective date of an announced change under the terms of the procedure, as it existed when the concern/claim was initially submitted to RESOLVE. The Company shall be obligated to proceed with any Covered Claim it may have against an employee under the version of RESOLVE in place at the time the Covered Claim arose.

Id. Courts have upheld agreements with similar "change-in-terms" language. See, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC, (5th Cir. 2004)(rejecting challenges to arbitration clauses containing change-in-terms provisions where the company was required to give prior notice of the change); Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 668 (6th Cir.2003) (same); Blair v. Scott Specialty Gases, 283 F.3d 595, 604 (3d Cir. 2002) (same); Pierce v. Kellogg, Brown & Root, Inc., 245 F.Supp.2d 1212, 1215 (E.D.Okla.2003) (same). Thus, the provision that allows GEHC to modify or discontinue the RESOLVE program does not make its agreement to arbitrate illusory.[3]

Finally, Plaintiff argues that not all of his claims are covered by the agreement. Plaintiff asserts that some of his claims could arguably fall under the "Excluded Claims" section of the arbitration agreement and, thus, an ambiguity exists. Therefore, Plaintiff argues, the ambiguity should be resolved in favor of the non-drafting party. However, it is well established that any ambiguities regarding the arbitrability of a dispute must be resolved in favor of arbitration. Moses H. Cone Mem. Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983); Accord American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996).

---

[3]Additionally, continued at-will employment after the implementation of a mandatory arbitration program is sufficient consideration to support the agreement to arbitrate. See Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001); Towles v. United Healthcare Corp., 524 S.E.2d 839, 845 n.4 (S.C. Ct. App. 1999).

## IV.     CONCLUSION

Plaintiff has failed to meet his burden of establishing that the arbitration agreement is unenforceable. Thus, Plaintiffs claims are subject to arbitration and are not proper in this court. As such, this Court lacks jurisdiction to address Defendants' Motion to Dismiss Individual Defendants or Plaintiff's Motion to Amend his Complaint. Because all of Plaintiff's claims are covered by the arbitration agreement, dismissal of an action to pursue arbitration is a proper remedy. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F. 3d 707, 709-10 (4th Cir. 2001). Therefore, it is recommended that Defendants' Motion to Dismiss or, Petition to Compel Arbitration and Stay Proceedings (Document # 22) be granted and the case be dismissed. In the alternative, it is recommended that the Motion be granted and the case be stayed pending arbitration.

                                                      s/Thomas E. Rogers, III
                                                      Thomas E. Rogers, III
                                                      United States Magistrate Judge

June 26, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the following page.**